1  David A. Grant, Bar No. 288760
   dag@paynefears.com
2  PAYNE & FEARS LLP
   Attorneys at Law
3  4 Park Plaza, Suite 1100
   Irvine, California 92614
4  Telephone: (949) 851-1100
   Facsimile: (949) 851-1212
5
   Attorneys for Plaintiff Mireyda Rebecca
6  Miranda

7

8            **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11 Mireyda Rebecca Miranda,                    Case No. 8:22-cv-00869-JVS-DFM
                                               Honorable James V. Selna
12           Plaintiff,                        Courtroom 10C

13      v.                                     **MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN SUPPORT OF**
14 Steven Selinsky, an individual; David       ***EX PARTE*** **APPLICATION OF
   Galan, an individual; Stacey Galan, an      PLAINTIFF MIREVDA REBECCA**
15 individual; Angel Anderson, an              **MIRANDA FOR:  (1) A
   individual; Collette Miller, an             TEMPORARY RESTRAINING
16 individual; Luxinvia, Inc. dba Monster      ORDER; (2) AN ORDER TO SHOW
   Marketing, a California corporation;        CAUSE WHY A PRELIMINARY
17 Fons Diviciarum LLC dba Monster             INJUNCTION SHOULD NOT
   Marketing, Google Ascent, and Top Pro      ISSUE; AND (3) AN ORDER THAT
18 SEO, a California Limited Liability         DEFENDANTS MAINTAIN ALL
   Company; and Does 1-10,                     COMPUTERS, ELECTRONIC
19                                             DEVICES, AND ELECTRONIC
             Defendants.                       EVIDENCE IMPLICATED IN THIS
20                                             CASE**

21                                             *Filed Concurrently with Ex Parte
                                               Application; Declarations of David A.*
22                                             *Grant, Mireyda Rebecca Miranda, and*
                                               *Benjamin A. Nix; [Proposed] Order*
23
                                               Judge:   Hon. James V. Selna
24                                             Crtrm.:  10C

25                                             Action Filed:  May 2, 2022
                                               Trial Date:  Not set
26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................... 1

II.   THE STANDARD FOR *EX PARTE* RELIEF ................................... 3

III.  STANDARD FOR A PRELIMINARY INJUNCTION ........................ 4

IV.  THIS SITUATION CALLS OUT FOR AN *EX PARTE* TRO AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE ........................................................................... 5

    A.    Defendants' Repeated and Ongoing Interception, Accessing of, and Deletion of Ms. Miranda's Private Facebook and Gmail Communications and Data ................................................................ 5

    B.    Defendants' Improper Use of Ms. Miranda's Private Facebook and Gmail Communications and Data ..................................... 7

        1.    Defendants' Applications for Temporary Civil Harassment Restraining Orders ........................................... 7

        2.    Defendants' Improper, Abusive, and Malicious Use of the Information they Intercepted and Hacked ................................. 8

            (a)    Defendants Used the Intercepted and Hacked Information to Trigger an Alleged Violation of Ms. Miranda's Probation ................................................. 8

            (b)    Defendants Used the Intercepted and Hacked Information to Abusively, Maliciously, and Improperly Interfere With Ms. Miranda's Admittance to Drug Court ................................................. 10

    C.    Defendants Explicitly Admitted That They had Improperly Intercepted, Hacked, Obtained, and Disclosed the Content of Ms. Miranda's Private Facebook and Gmail Communications and Data ................................................................ 11

    D.    Defendants' Illegal Conduct Must Be Enjoined Before May 11, 2022, at 8:30 a.m. ................................................................. 14

V.   ALL OF THE *WINTER* FACTORS TIP HEAVILY IN MS. MIRANDA'S FAVOR .......................................................................... 15

    A.    Ms. Miranda Is Likely to Succeed on the Merits of Her Claims ......... 15

        1.    Defendants Have Violated 18 United States Code Section 2511, Subsections (1)(a), (c), and (d) (the "Wiretap Act") ........ 15

        2.    Defendants Have Violated 18 United States Code sections 2701(a)(1) (the "Stored Communications Act") ..................... 16

        3.    Defendants Have Violated 18 United States Code sections

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1

<u>**TABLE OF CONTENTS**</u>
**(Continued)**

2

<u>**Page**</u>

3

1030, subsections (a)(2)(C), (a)(4), and (a)(5)(C) (the
"Computer Fraud and Abuse Act") ............................................. 16

4

5

4.   Defendants Have Violated California Penal Code section
502, subsections (c)(1), (c)(2), (c)(4), (c)(6), and (c)(7) ........... 17

6

5.   Defendants Have Committed Abuse of Process and
Extortion, Which Will Continue if Not Enjoined....................... 18

7

8

B.   Ms. Miranda Is Likely to Suffer Irreparable Harm in the Absence
of Preliminary Injunctive Relief ........................................................ 19

9

C.   The Balance of Equities Tip Heavily in Ms. Miranda's Favor............. 20

10

D.   An Injunction Is in the Public Interest ................................................. 20

11

E.   Ms. Miranda Should Not Be Required to Post a Bond to Obtain
Preliminary Injunctive Relief ............................................................. 21

12

VI.   CONCLUSION ............................................................................................. 21

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Federal Cases**

4

*All. for the Wild Rockies v. Cottrell,*
5
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 4

6

*Arizona Dream Act Coal. v. Brewer,*
7
    757 F.3d 1053 (9th Cir. 2014) ............................................................... 20

8

*Ayres v. City of Chicago,*
9
    125 F.3d 1010 (7th Cir. 1997) ............................................................... 20

10

*Facebook, Inc. v. Power Ventures, Inc.,*
    No. C 08–05780 JW, 2010 WL 3291750 (N.D.Cal.2010) ..................... 17
11

*Horne v. Wells Fargo Bank, N.A.,*
12
    969 F. Supp. 2d 1203 (C.D. Cal. 2013) .................................................... 3

13

*Jorgensen v. Cassiday,*
14
    320 F.3d 906 (9th Cir. 2003) ................................................................. 21

15

*Konop v. Hawaiian Airlines, Inc.,*
16
    302 F.3d 868 (9th Cir. 2002) ................................................................. 15

17

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,*
18
    634 F.2d 1197 (9th Cir. 1980) ............................................................... 19

19

*McComb v. Jacksonville Paper Co.,*
20
    336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949) ................................... 5

21

*Mintz v. Mark Bartelstein & Assocs. Inc.,*
22
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ............................................ 16, 18

23

*Mission Power Engineering Company v. Continental Casualty*
    *Company,*
24
    883 F. Supp. 488 (C.D. Cal. 1995) ........................................................... 1

25

*NovelPoster v. Javitch Canfield Grp.,*
26
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................... 16

27

*Pac. Kidney & Hypertension, LLC v. Kassakian,*
28
    156 F. Supp. 3d 1219 (D. Or. 2016) ....................................................... 21

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-iii-

Case No. 8:22-cv-00869-JVS-DFM

# TABLE OF AUTHORITIES
## (Continued)

Page

*Power v. Summers*,
   226 F.3d 815 (7th Cir. 2000) .................................................................. 4

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
   102 F.3d 12 (1st Cir. 1996) .................................................................. 19

*Scotts Co. v. United Indus. Corp.*,
   315 F.3d 264 (4th Cir. 2002) ............................................................... 20

*Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*,
   119 F. Supp. 2d 1121 (W.D. Wash. 2000) ........................................... 17

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009) .............................................................. 21

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .............................................................. 16

*United States v. Oregon State Med. Soc.*,
   343 U.S. 326, 72 S. Ct. 690, 96 L. Ed. 978 (1952) ............................... 5

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ................ 3, 4, 15, 22

**State Cases**

*Falcon Brands, Inc. v. Mousavi & Lee, LLP*,
   74 Cal. App. 5th 506, 289 Cal. Rptr. 3d 521 (2022) ..................... 13, 19

*Flatley v. Mauro*,
   39 Cal. 4th 299, 139 P.3d 2 (2006) ...................................................... 12

*Rusheen v. Cohen*,
   37 Cal. 4th 1048, 128 P.3d 713 (2006) ................................................ 18

*Stenehjem v. Sareen*,
   226 Cal. App. 4th 1405, 173 Cal. Rptr. 3d 173 (2014) ............... 12, 13, 19

*Tellefsen v. Key Sys. Transit Lines*,
   198 Cal. App. 2d 611, 17 Cal. Rptr. 919 (1961) ......................... 18, 19

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Case No. 8:22-cv-00869-JVS-DFM

MEMORANDUM OF POINTS & AUTHORITIES ISO PLAINTIFF'S
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**Federal Statutes**

18 USC §1030(a)(2)(C) ...................................................................................... 16

18 USC §1030(a)(4) ........................................................................................... 16

18 USC §1030(a)(5)(C) ...................................................................................... 17

18 USC §1030(g) ............................................................................................... 17

18 USC §1030, subsecs. (a)(2)(C), (a)(4), and (a)(5)(C) ...................................... 16

18 USC § 2511(1)(a) .......................................................................................... 15

18 USC § 2511(c) ............................................................................................... 15

18 USC § 2511(d) ............................................................................................... 15

18 USC § 2511, subsecs. (1)(a), (c), and (d) ...................................................... 15

18 USC § 2520(b)(1) .......................................................................................... 15

18 USC § 2701(a)(1) .......................................................................................... 16

28 USC § 2510(17) ............................................................................................ 16

28 USC § 2707(a) ............................................................................................... 16

28 USC § 2707(b)(1) .......................................................................................... 16

**State Statutes**

Cal. Penal Code § 502(c)(1) ............................................................................... 17

Cal. Penal Code § 502(c)(2) ............................................................................... 17

Cal. Penal Code § 502(c)(4) ............................................................................... 17

Cal. Penal Code § 502(c)(6) ............................................................................... 17

Cal. Penal Code § 502(c)(7) ............................................................................... 17

California Civil Code § 47 .............................................................................. 13, 19

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

California Penal Code § 502, subsecs. (c)(1), (c)(2), (c)(4), (c)(6), and
(c)(7) ................................................................................................................ 17

Califrnia Penal Code § 519 ................................................................................ 12

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Case No. 8:22-cv-00869-JVS-DFM

MEMORANDUM OF POINTS & AUTHORITIES ISO PLAINTIFF'S
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

Plaintiff Mireyda Rebecca Miranda ("Ms. Miranda") does not bring this *ex parte* application (the "Application") lightly or unaware of the warnings in *Mission Power Engineering Company v. Continental Casualty Company*, 883 F. Supp. 488 (C.D. Cal. 1995), cautioning against the misuse of *ex parte* applications.  There is little doubt that Ms. Miranda has suffered, and will continue to suffer, immediate and irreparable injury should a temporary restraining order ("TRO") not issue.

As set forth below, Ms. Miranda's Application meets the requirement for *ex parte* relief in that there is a real threat of immediate and irreparable injury to Ms. Miranda if an *ex parte* TRO does not issue.  This is not based on speculation.  This is based on defendants' own admissions and express statements.

The defendants to be enjoined, Steven Selinsky, David Galan, Stacey Galan, Luxinvia, Inc. dba Monster Marketing, and Diviciarum LLC dba Monster Marketing, and all their officers, agents, and employees (collectively "Defendants"), have been on the war path to force Ms. Miranda to give up her potential claims against them after she questioned whether she was terminated for discriminatory reasons as she is of Mexican heritage and Stacey Galan, one of Monster Marketing's owners, openly talked about "hating Mexicans" in Monster Marketing's offices.

This war path includes the repeated and ongoing interception, hacking, and deletion of Ms. Miranda's private electronic communications and data, including communications with her counsel.  Defendants have violated numerous Federal and state statutes, many of which expressly authorize preliminary injunctive relief.

Defendants have not been deterred by Ms. Miranda filing and serving the original Complaint in this matter.  They have not been deterred by Ms. Miranda filing and serving the First Amend Complaint ("FAC").

In fact, just yesterday, May 8, 2022, Defendants again attempted to hack into Ms. Miranda's private Facebook account and intercept and obtain her private electronic communications.

1    Moreover, Defendants have used the confidential electronic communications

2    and data they have already intercepted and hacked in ruthless attempts to ruin Ms.

3    Miranda's life.  Using the illegally-obtained information, they have attempted to

4    trigger a violation of Ms. Miranda's probation.  As set forth below, they have

5    repeatedly, maliciously, and improperly, disclosed their illegally-obtained

6    information at every possible occasion to prevent Ms. Miranda from entering

7    Orange County's jail-diversion programs.

8    Ms. Miranda's next appearance for such a program is Wednesday, May 11,

9    2022, at 8:30 a.m.  If Defendants are not enjoined before then, they will again try to

10   prevent her from entering the program, thus sending her to jail.  Why would they do

11   this?  There is no clear answer.  But defendant Stacey Galan has been openly

12   celebrating their improper efforts to send Ms. Miranda to jail, even smiling widely

13   while posing with a doctored photo of Ms. Miranda behind bars, with the words

14   "Happy Birthday, Stacey" written on it.

15   And how does Ms. Miranda know Defendants will continue with their illegal

16   hacking and abuse of process?  Because Defendants have (1) expressly admitted to

17   intercepting Ms. Miranda's electronic communications, and (2) expressly stated that,

18   if Ms. Miranda did not release them of any and all claims she might bring against

19   them, they will report her, her father, and her attorney to the relevant authorities.

20   The impunity with which Defendants have violated Federal and state statutes, have

21   extorted Ms. Miranda, and have committed abuse of process is shocking.  Ms.

22   Miranda does not believe it is an overstatement to say that this situation cries out for

23   an *ex parte* TRO.

24   To that end, Ms. Miranda requests that Defendants be immediately enjoined

25   from:  (1) further attempting to intercept, obtain, use, or destroy Ms. Miranda's

26   confidential electronic communications; (2) disclosing any of the illegally-obtained

27   information they have already improperly intercepted, obtained, and used in

28   attempts to prevent her acceptance into a jail-diversion program on May 11, 2022,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-2-                    Case No. 8:22-cv-00869-JVS-DFM

1 │ and otherwise thereafter; and (3) destroying any additional evidence relevant to this

2 │ case.  With respect to the last item, Ms. Miranda requests that Defendants be

3 │ ordered to maintain, in their unaltered states, all computers, electronic devices, and

4 │ electronic evidence implicated in this case.

5 │      Ms. Miranda also requests that this Court order Defendants to show cause

6 │ why a preliminary injunction should not issue, cementing the relief she requests

7 │ with this Application.  As set forth below, Ms. Miranda respectfully submits that all

8 │ of the *Winter* factors weigh heavily in favor of such a preliminary injunction being

9 │ granted.

10 │ ## II.  THE STANDARD FOR *EX PARTE* RELIEF

11 │      "The use of [*ex parte*] procedures is justified only when (1) there is a threat of

12 │ immediate or irreparable injury; (2) there is danger that notice to the other party may

13 │ result in the destruction of evidence or the party's flight; or (3) the party seeks a

14 │ routine procedural order that cannot be obtained through a regularly noticed motion

15 │ (i.e., to file an overlong brief or shorten the time within which a motion may be

16 │ brought)."  *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal.

17 │ 2013).

18 │      As demonstrate below, Ms. Miranda faces a true threat of immediate and

19 │ irreparable injury.  To wit, despite having been served with the original Complaint

20 │ in this matter and the FAC, Defendants continue with impunity to illegally intercept,

21 │ access, and use Ms. Miranda's private Facebook and Gmail electronic

22 │ communications in their unrelenting attempts to extort Ms. Miranda and send her to

23 │ jail for malicious and abusive reasons and ruin this young woman's life.  Defendants

24 │ have admitted to intercepting and hacking Ms. Miranda's electronic

25 │ communications.

26 │      They have also expressly extorted Ms. Miranda by stating that, if she did not

27 │ release any and all claims she might have against them, they would continue in their

28 │ attempts to put her in jail by "making a call to the DA" and by making explicit

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-3-      Case No. 8:22-cv-00869-JVS-DFM

threats to report unspecified wrongdoing by her father and her attorney to the authorities.

Moreover, their next opportunity to attempt to block her admission to a jail-diversion program (opportunities they have seized upon in the past and stated they will seize upon again) is Wednesday, May 11, 2022, at 8:30 a.m.  The threat of injury to Ms. Miranda is immediate and ongoing.  And no amount of monetary damages can recompense her for the injury she will suffer if Defendants are not enjoined.

## III.   STANDARD FOR A PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [3] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).

Here, Ms. Miranda has strong, compelling evidence as to each of the four *Winter* factors.  However, even if the Court disagrees, the Ninth Circuit still applies a "sliding scale" approach to these factors such that "a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised [but] the balance of hardships tips sharply in [plaintiff's] favor.'" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

Moreover, that Defendants have admittedly and repeatedly violated, and continue to violate, statutory prohibitions against the interception, access, obtaining, and use of Ms. Miranda's private Facebook and Gmail electronic communications and data, including attorney-client-privileged communications, and have deleted electronically stored data from Ms. Miranda's accounts.  Such violations virtually always warrant injunctive relief.  *See, e.g.*, *Power v. Summers*, 226 F.3d 815, 819

1   (7th Cir. 2000) ("It is not uncommon for an injunction to repeat a statutory or

2   equivalent prohibition . . . , and this is proper relief, as the Supreme Court

3   emphasized in *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 19192, 69 S.Ct.

4   497, 93 L.Ed. 599 (1949), in order to prevent the defendant from repeating his

5   violation in slightly different form . . . .").

6       In addition, many of the statutes that Defendants have violated and continue

7   to violate authorize preliminary injunctive relief.

8       Finally, Defendants' conduct has demonstrated that they are undeterred in

9   their wrongdoing.  There "is a real threat of future violation [and] contemporary

10  violation[s] of a nature likely to continue or recur[,]" which warrants injunctive

11  relief.  *United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690,

12  695, 96 L. Ed. 978 (1952)

13  **IV.    THIS SITUATION CALLS OUT FOR AN *EX PARTE* TRO AND AN**

14  **ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION**

15  **SHOULD NOT ISSUE**

16      **A.    Defendants' Repeated and Ongoing Interception, Accessing of, and**

17  **Deletion of Ms. Miranda's Private Facebook and Gmail**

18  **Communications and Data**

19      Defendants have demonstrated zero respect for the law by repeatedly

20  intercepting, accessing, obtaining, and improperly using Ms. Miranda's private

21  Facebook and Gmail communications and data.  Moreover, there is incontrovertible

22  evidence that (1) Defendants' illegal intercepting, accessing, and use of Ms.

23  Miranda's private Facebook and Gmail electronic communications and data is

24  ongoing, and that (2) by these illegal acts, Defendants had access to Ms. Miranda's

25  privileged communications with her counsel, David Grant.

26      Ms. Miranda is a former employee of Defendants.  (Declaration of Mireyda

27  Rebecca Miranda ("Miranda Decl.") ¶ 2.)  Ms. Miranda was terminated on February

28  2, 2022.  (Miranda Decl. ¶ 3.)

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Defendants successfully accessed Ms. Miranda's private Facebook account on at least three separate occasions after Ms. Miranda left the company—on (1) February 10, 2022, at 1:33 p.m.; (2) February 10, 2022, at 2:13 p.m., and (3) on April 14, 2022, at 11:15 a.m.  (Miranda Decl. ¶¶ 4 & 5; Exs. A & B.)  Defendants did this before they were served with the original Complaint in this matter.

Moreover, on February 10, 2022, Defendants "recovered" Ms. Miranda's private Gmail account, allowing them to intercept and review her private Gmail communications.  (Miranda ¶ 6; Ex. C.)  And on April 19, 2022, Defendants again attempted—perhaps successfully, perhaps unsuccessfully—to access Ms. Miranda's private Gmail account.  (Miranda Decl. ¶ 7; Ex. D.)

Defendants were served with the original Complaint in this matter on April 26, 2022, and April 27, 2022.  (Declaration of David A. Grant ("Grant Decl.") ¶ 2; Ex. E.)

Remarkably, before—and even after being served—Defendants somehow were able to reset Ms. Miranda's Facebook password to gain access to her private account.  (Miranda Decl. ¶ 8; Ex. F.)  Defendants reset Ms. Miranda's Facebook password, and obtained access to her private account and messages on April 5, 2022; April 13, 2022; April 19, 2022; April 20, 2022; and May 1, 2022.  (*Id.*)  This is not mere speculation, there is concrete evidence that, on April, 29, 2022, Defendants accessed Ms. Miranda's Facebook account from Monster Marketing's Lake Forest offices (21 Spectrum Drive, Suite 101, Lake Forest, California, 92630) for 24 minutes.  (Miranda Decl. ¶¶ 9 & 10; Exs. G & H.)

Moreover, while Ms. Miranda was able to view the location of the April 29 login, the login history screen states:  "Your location is private and you can delete it at any time."  (Miranda Decl. ¶ 9; Ex. G.)  Ms. Miranda has not been able to view this login history screen with respect to the other times on which Defendants accessed to her private account.  (Miranda ¶ 11.)  This strongly suggests that Defendants deleted the location history for their previous logins.  (*Id.*)  Combined

-6-

with other evidence adduced below of Defendants deleting communications and data from Ms. Miranda's private Facebook account, this leads to the all-but-certain conclusion that Defendants deleted the location history associated with their numerous logins to Ms. Miranda's account in an attempt to cover their tracks.

But Defendants' accessing of Ms. Miranda's accounts didn't end there.  On May 6, 2022, Defendants were served with the First Amended Complaint ("FAC") in this matter.  (Grant Decl. ¶ 3.)

Still undeterred, **yesterday**, May 8, 2022, Defendants again reset Ms. Miranda's Facebook password to gain access to her account.  (Miranda Decl. ¶ 12; Ex. I.)

### B.   Defendants' Improper Use of Ms. Miranda's Private Facebook and Gmail Communications and Data

#### 1.   Defendants' Applications for Temporary Civil Harassment Restraining Orders

Defendants didn't just illegally intercept, access, and obtain Ms. Miranda's private Facebook and Gmail messages.  They used them.  They used them to abuse the processes afforded under the law and to extort Ms. Miranda.

As set forth in Ms. Miranda's original complaint and FAC, Defendants sought Temporary Civil Harassment Restraining Orders ("TCHROs") against Ms. Miranda based on lies.  On February 23, 2022, defendant Steven Selinsky, filed an application for a temporary harassment restraining order ("TCHRO"), in which he falsely accuses Ms. Miranda having guns and knives and threatening him with physical harm.  (Miranda Decl. ¶ 13; Ex. J.)  On March 2, 2022, defendant David Galan (on behalf of himself and defendant Stacey Galan) filed an application for a TCHRO, in which he falsely accuses Ms. Miranda of having guns and knives and threatening them with physical harm.  (Miranda Decl. ¶ 14; Ex. K.)

On March 16, 2022, an initial hearing was held on defendant Steven Selinsky's and defendant David Galan's TCHRO applications.  (Grant Decl. ¶ 4.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-7-

1   Ms. Miranda requested a continuance, which she was entitled to as a matter of right.

2   (*Id.*)  The judge maintained the initially-issued TCHROs until the continued hearing

3   on the TCHROs could be held on April 4, 2022.  (*Id.*)

4               **2.    Defendants' Improper, Abusive, and Malicious Use of the**

5                      **Information they Intercepted and Hacked**

6               **(a)   Defendants Used the Intercepted and Hacked**

7                      **Information to Trigger an Alleged Violation of Ms.**

8                      **Miranda's Probation**

9         However, before Ms. Miranda could appear at the continued TCHRO hearing,

10  Defendants improperly, abusively, and maliciously used some of the information

11  they intercepted and hacked to trigger a violation of her probation.

12        On March 24, 2022, when Ms. Miranda appeared for her regular probation

13  appointment, she was arrested because Defendants informed Ms. Miranda's

14  probation officer and/or the Orange County District Attorney that Ms. Miranda had

15  allegedly violated the TCHRO by posting messages to a semipublic, forum-style

16  chat platform called "Discord"[1]—messages allegedly directed at Steven Selinsky,

17  _____

18  [1] Discord is a chat app, similar to programs such as Skype or TeamSpeak, or
    professional communications platforms like Slack. It's geared specifically toward
19  video game players, providing them with ways to find each other, coordinate play,
    and talk while playing. It supports video calls, voice chat, and text, allowing users to
20  get in touch however they please.

21  Discord is especially useful if you're trying to play PC games. The app makes
    chatting pretty easy and offers search functions that can help you find other people
22  and add them to a friends list for quick communication. Lots of people use it not just
    for talking to each other while playing games, but as an organizational and social
23  tool.

24  Thanks to this breadth of functionality, users have also embraced Discord as a
    semipublic, forum-style community platform . . . .
25
    So how does Discord work? In a word: Servers. As with other chat apps, such as
26  Slack, Discord lets you set up a chat room it refers to as a server, to which you can
    invite people.
27
    Joining a server is as easy as clicking a link, though, generally speaking, you need to
28  be invited first. Many servers are public and available through Discord's search

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP

ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1    David Galan, and/or Stacey Galan.  (Miranda Decl. ¶ 15.)  The "Discord" post did

2    not specifically mention any of these individuals by name, but only question

3    whether it was legal to practice law in California without a license.  (Grant Decl. ¶

4    5; Ex. L.)

5        Ms. Miranda made this post because she had previously been under the

6    impression that defendant Steven Selinsky was an attorney, licensed to practice law

7    in California, because he held himself out as an attorney, gave substantive legal

8    advice to Monster Marketing employees, including Ms. Miranda, and used his

9    alleged status as an attorney to threaten Monster Marketing customers.  (Miranda

10   Decl. ¶¶ 16-22; Grant Decl. ¶ 6; Exs. M & N.)

11       Mr. Selinsky is not licensed to practice law in California.  (Grant Decl. ¶¶ 7 &

12   8; Exs. O & P.)

13       At Ms. Miranda's regular probation check-in on March 24, 2022, Ms.

14   Miranda was informed that she was being arrested due to Defendants alleging that

15   she had violated the TCHRO by making this post to Discord.  (Miranda Decl. ¶ 15.)

16   She would not be released until March 28.  (Miranda Decl. ¶ 22.)

17       During that time, defendant Stacey Galan celebrated her birthday.  (Miranda

18   Decl. ¶ 23.)  Part of that celebration was a doctored-and-unflattering picture of Ms.

19   Miranda behind bars.  (Miranda Decl. ¶ 23 Ex. Q.)  Written on the picture are the

20   words "Happy Birthday Stacey."  (*Id.*)  There is legitimate joy—and certainly a big,

21   happy smile—on defendant Stacey Galan's face.  She was gloating about the fact

22   that she had severely harmed Ms. Miranda.

23       On March 28, 2022, the court held a hearing on the alleged probation

24

25   function — for instance, Pokémon Go players in Los Angeles have a public "PoGo
     LA" server to coordinate playing the game in their city, and anybody can join it.
26   Discord also has special "verified servers" — official servers created by game
     studios and other notable entities that serve as official community forums for fans to
27   chat with each other and with game developers.

28   https://www.digitaltrends.com/gaming/what-is-discord/ (last visited April 27, 2022,
     at 3:08 p.m. PST).

Case No. 8:22-cv-00869-JVS-DFM

MEMORANDUM OF POINTS & AUTHORITIES ISO PLAINTIFF'S
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1   violation and released her on her own recognizance and referred her to Orange

2   County's Drug-Court-Diversion program ("Drug Court") to determine fit and

3   eligibility.  (Miranda Decl. ¶ 24.)

4                    **(b)     Defendants Used the Intercepted and Hacked**

5                    **Information to Abusively, Maliciously, and Improperly**

6                    **Interfere With Ms. Miranda's Admittance to Drug**

7                    **Court**

8         On April 2, 2022, Ms. Miranda appeared for an initial evaluation for Drug

9   Court, to determine whether Ms. Miranda liked Drug Court and would want to be a

10  part of it.  (Miranda Decl. ¶ 25.)  Ms. Miranda stated that she would like to enter the

11  Drug Court program.  (*Id.*)  An eligibility hearing was set for April 17, 2022.  (*Id.*)

12        On April 17, 2022, Ms. Miranda appeared for a determination of her

13  eligibility and admission to Drug Court.  (Miranda Decl. ¶ 26.)  At that time she was

14  informed that Defendants had stated to Ms. Miranda's probation officer and/or the

15  Orange County District Attorney that they believed that Ms. Miranda had violated

16  the TCHROs by:

17                    **(1)**  On April 11, 2022, Ms. Miranda's attorney
                      sending a settlement email to defendants Steven
18                    Selinsky and David Galan. (Grant Decl. ¶ 9; Ex.
                      R.)  This email is a privileged communication
19                    under California Civil Code section 47(b), and
                      cannot, as a matter of law, form the basis of an
20                    alleged violation of  California Code of Civil
                      Procedure section 527.6 (the TCHRO statute) *See,*
21                    *e.g., Dziubla v. Piazza*, 59 Cal. App. 5th 140, 150-
                      51, 273 Cal. Rptr. 3d 297, 305 (2020);

22                    **(2)**  Ms. Miranda sending a single private
23                    Facebook message to a Monster Marketing
                      employee (not one of the petitioners for the
24                    TCHROs) stating only "Brandon[;]" and

25                    **(3)**  Ms. Miranda contacting former Monster
                      Marketing customers through her private Facebook
26                    messages.

27  Defendants clearly knew the specific content of Ms. Miranda's private messages as

28  the details of that content were disclosed to Ms. Miranda at her evaluation.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-10-                                           Case No. 8:22-cv-00869-JVS-DFM

(Miranda Decl. ¶ 26.)  The content of Ms. Miranda's private Facebook messages could only have been obtained through the repeated, illegal, and intentional interception and hacking of Ms. Miranda's private electronic communications.

Based on these disclosures by Defendants, the judge did not accept Ms. Miranda into Drug Court at that time.  (Miranda Decl. ¶ 27.)  Instead he continued the hearing on her eligibility to April 27, 2022.  (*Id.*)

**C.**   **Defendants Explicitly Admitted That They had Improperly Intercepted, Hacked, Obtained, and Disclosed the Content of Ms. Miranda's Private Facebook and Gmail Communications and Data**

On April 20, 2022, Ms. Miranda appeared with counsel for the continued TCHRO hearing.  (Declaration of Benjamin A. Nix ("Nix Decl.") ¶ 2.)  The judge ordered the parties to mediation.  (*Id.*)  The parties came close to settling the dispute, and informed the judge of their progress.  (*Id.*)  The judge ordered them to file a notice of settlement and dismissals by April 27, 2022, if they were able to settle the matter.  (*Id.*)  If the parties could not, they would go to the trial on the TCHROs on the 27th.  (*Id.*)

However, Defendants demanded a settlement—not confined to the parameters of the TCHRO applications—but of any and all claims Ms. Miranda might have against any of the Defendants.  This was unacceptable to Ms. Miranda.  (Nix Decl. ¶ 3.)

In response an April 22, 2022, email from Ms. Miranda's attorney to Defendants stating that Ms. Miranda would not enter into a global settlement (in the context of the TCHROs), that would release the Defendants of all claims, defendant Selinsky called Ms. Miranda's counsel and asked whether Ms. Miranda "wants to go to jail or risk that?" and stated, "I would not want to go to jail."  (Nix Decl. ¶¶ 4 & 5; Ex. S.)  Defendant Selinsky expressly stated that, if Ms. Miranda did not agree to the global settlement Defendants demanded, Defendants would appear at Ms. Miranda's Drug-Court eligibility hearing on April 27, 2022, for the stated purpose

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

of objecting to her being admitted into Drug Court. (*Id.*)  Defendant Selinksy admitted to Ms. Miranda's counsel that Defendants had intercepted, accessed, and obtained Ms. Miranda's private Facebook and Gmail communications and data. (*Id.*)  But he claimed Defendants were authorized to do so under Monster Marketing's alleged employee handbook. (*Id.*)  However, Monster Marketing never had an employee handbook. (Miranda Decl. ¶ 28.)  Ms. Miranda was never presented with the alleged employee handbook. (*Id.*)  And Ms. Miranda's employee file does not contain any acknowledgment of having received the alleged employee handbook. (*Id.* Ex. T.)

Defendant Selinsky followed up his call with a text message threatening that, if Ms. Miranda did not enter into a global settlement, releasing the Defendants of all claims, the Defendants would "call the DA because [they] want[ed]" to testify at Ms. Miranda's Drug-Court-eligibility hearing.  Defendant Selinsky further wrote that, if Ms. Miranda did not enter into the global settlement and release they were demanding, they would report Ms. Miranda's father and her attorney, David Grant, to the police/authorities for some unspecified reasons. (Nix Decl. ¶ 6; Ex. U.)

Defendants have thus extorted Ms. Miranda.  *See e.g., Flatley v. Mauro*, 39 Cal. 4th 299, 326-27, 139 P.3d 2, 20 (2006) (The "threats to do the acts that constitute extortion under Penal Code section 519 are extortionate whether or not the victim committed the crime or indiscretion upon which the threat is based and whether or not the person making the threat could have reported the victim to the authorities or arrested the victim. . . .  Furthermore, the crime with which the extortionist threatens his or her victim need not be a specific crime."); *see also Stenehjem v. Sareen*, 226 Cal. App. 4th 1405, 1424, 173 Cal. Rptr. 3d 173, 188 (2014) ("The fact that [defendant's] e-mail may have been less than explicit—in that it did not contain conditional language, such as 'Unless [plaintiff] pays me for my claims, I will report him to the federal authorities for violations of the federal False Claims Act'—does not make its character any less illegal.").

-12-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1    And the fact that defendant Selinsky couched these threats in terms of

2 inadmissible settlement communications is flat wrong on the law and unavailing.

3 *See, e.g.*, *Stenehjem*, 226 Cal. App. 4th at 1427 (rejecting defendant's arguments

4 that its "settlement communications" were inadmissible and "absolutely privileged"

5 under California Civil Code section 47); *see also Falcon Brands, Inc. v. Mousavi &*

6 *Lee, LLP*, 74 Cal. App. 5th 506, 523, 289 Cal. Rptr. 3d 521, 533 (2022) (same).

7    Ms. Miranda was undeterred by Defendants' extortion and refused to give up

8 valuable property (her claims against Defendants) despite their extortionate threats.

9 (Nix Decl. ¶ 7.)

10    Accordingly, on April 27, 2022, Ms. Miranda and her counsel appeared

11 prepared for trial on Defendants' TCHRO applications.  (Grant Decl. ¶ 10.)

12 Amazingly, when Defendants gave Ms. Miranda the exhibits they intended to use at

13 the trial on Defendants' TCHRO applications, they included printouts of the

14 electronic data and communications Defendants had intercepted and hacked from

15 Ms. Miranda's private Facebook and Gmail accounts.  (*Id.* ¶ 11; Exs. V-Y.)

16    Defendants' planned exhibits for the TCHRO trial are beyond shocking.  For

17 instance, they show that on March 10, 2022, more than a month after Ms. Miranda

18 was terminated, Defendants were still illegally accessing, and obtaining information

19 from, Ms. Miranda's private Gmail address, aqticumireydamiranda@gmail.com.

20 (Grant Decl. ¶ 11; Ex. V)  Not only did this confirm Defendants' interception,

21 hacking, and use of Ms. Miranda's private electronic communications, it begs

22 another question:  <u>What else did Defendants view?</u>  This is not a question without

23 consequence.  Ms. Miranda used this email address to communicate with her

24 counsel during the litigation of the TCHRO applications.  (Miranda Decl. ¶ 29.)

25    Furthermore, one of Defendants' exhibits shows on the left hand side that

26 Defendants had access to <u>all</u> of her Facebook instant messages.  (Grant Decl. ¶ 11;

27 Ex. W.)  Although hard to read, one of the people with whom Ms. Miranda was

28 messaging is "Dave Grant," her attorney in this matter and who represented her

-13-

during the course of the litigation of the TCHRO applications. (*Id.*)  The messages with Ms. Miranda's counsel are fourth from the top on the list of persons with whom Ms. Miranda was messaging. (*Id.*)  Again, this begs the question:  <u>What else did Defendants view?</u>  Defendants have demonstrated that they had access to Ms. Miranda's private Facebook electronic communications, <u>including her private and privileged communications with her counsel</u>. (*Id.*)

Defendants' illegal actions have further demonstrated that they are not above viewing Ms. Miranda's privileged communications with her counsel.  It's hard to overstate how necessary a TRO is under these circumstances.

Finally, not only did Defendants explicitly confirm their interception, hacking, and use of Ms. Miranda's private Facebook and Gmail communications and data, their disclosure further confirmed that they had deleted Ms. Miranda's private Facebook messages.  Defendants had, as an intended exhibit, Ms. Miranda's private Facebook communications with ELEET Pest Elimination Services.  (Grant Decl. ¶ 11; Ex. X.)  However, when Ms. Miranda went into her private Facebook messages to check the authenticity of the exhibit, she discovered that her communications with ELEET had been deleted—and not by her.  (Miranda Decl. ¶ 30; Ex. Y.)

This begs a different question:  <u>What else from Ms. Miranda's private Facebook account have Defendants deleted?</u>  As such, this TRO is absolutely necessary to prevent further abuses by Defendants, including destruction of evidence.

**D.**   <u>**Defendants' Illegal Conduct Must Be Enjoined Before May 11, 2022, at 8:30 a.m.**</u>

Defendants' illegal interception, access, use, and disclosure of Ms. Miranda's private electronic communications and data successfully derailed Ms. Miranda's attempts to get into the Drug Court diversion program. (Miranda Decl. ¶ 31.)  She is to be evaluated for mental health court on May 11, 2022, at 8:30 a.m., an alternative

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-14-

1  diversion program  (*Id.*)  She is legitimately afraid—based on Defendants' abhorrent

2  conduct—that Defendants will continue to interfere with her ability to access these

3  diversion programs, and will settle at nothing less than sending her to jail, unless

4  their actions are enjoined.  (*Id.*)

5  **V.  ALL OF THE *WINTER* FACTORS TIP HEAVILY IN MS.**

6  **MIRANDA'S FAVOR**

7  **A.  Ms. Miranda Is Likely to Succeed on the Merits of Her Claims**

8  The facts above are indisputable.  As set forth above and below, Ms. Miranda

9  has a high likelihood of succeeding on the merits of her claims.

10  **1.  Defendants Have Violated 18 United States Code Section**

11  **2511, Subsections (1)(a), (c), and (d) (the "Wiretap Act")**

12  Defendants have violated 18 USC § 2511(1)(a) by intentionally intercepting

13  and endeavoring to intercept Ms. Miranda's electronic communications.

14  Defendants have violated 18 USC § 2511(c) by intentionally disclosing to any

15  other person the contents of Ms. Miranda's electronic communications, knowing

16  that the information was obtained through the interception of her electronic

17  communications.

18  Defendants have violated 18 USC § 2511(d) by intentionally using the

19  contents of Ms. Miranda's electronic communications, knowing that the information

20  was obtained through the interception of her electronic communications.

21  18 USC § 2520(b)(1) expressly authorizes preliminary injunctive relief for

22  these violations of Section 2511.

23  And Ms. Miranda contends that, because Defendants had real-time,

24  contemporaneous access to her electronic communications because they stayed

25  logged in to her accounts, Defendants interceptions are actionable.  *See, e.g.*, *Konop*

26  *v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877 (9th Cir. 2002) (interception of

27  electronically stored communications must occur contemporaneously with their

28  transmissions).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-15-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

///

## 2.   Defendants Have Violated 18 United States Code sections 2701(a)(1) (the "Stored Communications Act")

Defendants have violated 18 USC § 2701(a)(1) by intentionally accessing, without authorization, a facility through which an electronic communication service is provided (i.e., Ms. Miranda's private Facebook and Gmail messages) and both obtaining and altering her electronic communications while it is in electronic storage.  "[E]lectronic storage" is defined as either "temporary, intermediate storage . . . incidental to . . . electronic transmission," or "storage . . . for purposes of backup protection."  28 USC § 2510(17).  The storage of Ms. Miranda's private electronic Facebook and Gmail communications falls squarely under the "for purposes of backup protection" definition.  *See, e.g.*, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004).

28 USC § 2707(a) affords Ms. Miranda a private right of action under Section 2701, and expressly authorizes preliminary injunctive relief.  28 USC § 2707(b)(1).

## 3.   Defendants Have Violated 18 United States Code sections 1030, subsections (a)(2)(C), (a)(4), and (a)(5)(C) (the "Computer Fraud and Abuse Act")

Defendants have violated 18 USC § 1030(a)(2)(C) by intentionally accessing a computer without authorization and obtaining information from a protected computer.  Ms. Miranda's private Facebook and Gmail accounts constitute a protected computer.  *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 946 (N.D. Cal. 2014) (defendants liable for accessing information from a protected computer by accessing plaintiff's email accounts); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1029 (C.D. Cal. 2012) (same).

Defendants have violated 18 USC § 1030(a)(4) by knowingly, and with intent to defraud, accessing a protected computer without authorization, and by means of such conduct furthered the intended fraud.  In this context "intent to defraud" simply

-16-

means wronging one in his property rights by dishonest methods or schemes. *See, e.g.*, *Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1125-26 (W.D. Wash. 2000)

Defendants have violated 18 USC § 1030(a)(5)(C) by intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage and loss.

18 USC § 1030(g) affords Ms. Miranda a civil remedy for Defendants' violations, including injunctive relief for her losses resulting therefrom.

**4.  Defendants Have Violated California Penal Code section 502, subsections (c)(1), (c)(2), (c)(4), (c)(6), and (c)(7)**

Defendants have violated Cal. Penal Code § 502(c)(1) by knowingly and without permission deleting, destroying, and using any Ms. Miranda's electronic data in order to both defraud and extort Ms. Miranda and wrongfully control or obtain property from her (i.e., the release of her civil claims against them).

Defendants have violated Cal. Penal Code § 502(c)(2) by knowingly and without permission making use of Ms. Miranda's private data from a computer system.

Defendants have violated Cal. Penal Code § 502(c)(4) by knowingly and without permission deleting and destroying Ms. Miranda's private data on a computer system.

Defendants have violated Cal. Penal Code § 502(c)(6) by knowingly and without permission providing or assisting in providing a means of accessing Ms. Miranda's private data on a computer system in violation of this section.

Defendants have violated Cal. Penal Code § 502(c)(7) by knowingly and without permission accessing Ms. Miranda's private data on a computer system.

Although Ms. Miranda's losses have been substantial, Section 502(e)(1) provides Ms. Miranda a civil remedy no matter the amount of loss she has suffered. *See, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780 JW, 2010 WL

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

3291750, at *4 (N.D.Cal.2010) (holding that the fact that plaintiff "expended resources" to stop further violations of § 502 sufficed to establish damages, even if such resources only comprised a few "clicks of a mouse" and some "keystrokes"); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031–32 (C.D. Cal. 2012) (same).

## 5. Defendants Have Committed Abuse of Process and Extortion, Which Will Continue if Not Enjoined

Via this illegal interception and hacking of Ms. Miranda's private electronic communications and data, Defendants have gone to extreme measures to convince Ms. Miranda not to pursue claims against them.  In those efforts they have triggered alleged violations of Ms. Miranda's probation and have done their best to see to it that she be sent to jail.  They have entertained ulterior motives in using the processes afforded by the criminal justice system and committed these willful acts in wrongful manners, including extorting Ms. Miranda.

This is text book abuse of process. *See, e.g.*, *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057, 128 P.3d 713, 718 (2006) ("The essence of the tort is misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." (alterations, citation, and quotation omitted)); *see also Tellefsen v. Key Sys. Transit Lines*, 198 Cal. App. 2d 611, 616, 17 Cal. Rptr. 919, 923 (1961) ("The gravamen of the misconduct for which the liability stated in this section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.").

Here Defendants' "improper purpose [has taken] the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Tellefsen*, 198 Cal. App. 2d at 615.  "There is, in other words, a

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-18-

1   form of extortion, and it is what is done in the course of negotiation, rather than the

2   issuance of any formal use of the process itself, which constitutes the tort." *Id.* at

3   615-16.

4        And, while defendant Selinksy fancies himself a lawyer, and tried to shield

5   his express extortion as inadmissible "settlement" communications, the law is

6   expressly contrary. *See, e.g.*, *Stenehjem*, 226 Cal. App. 4th at 1427 (rejecting

7   defendant's arguments that its "settlement communications" were inadmissible and

8   "absolutely privileged" under California Civil Code section 47); *see also Falcon*

9   *Brands, Inc*, 74 Cal. App. 5th at 523 (same).

10       **B.   Ms. Miranda Is Likely to Suffer Irreparable Harm in the Absence**

11            **of Preliminary Injunctive Relief**

12       At base, this factor hinges on whether, at the end of this case, Ms. Miranda

13  can be adequately compensated for the injury Defendants will continue to inflict

14  upon her via monetary damages.  *See, e.g.*, *Los Angeles Mem'l Coliseum Comm'n v.*

15  *Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (question is whether

16  compensatory monetary damages will be available at the end of the case and

17  adequate to remedy the harm).

18       Monetary damages cannot make Ms. Miranda whole should Defendants

19  succeed in their illegal and extortionary conduct.  Should Defendants be allowed to

20  use the information they illegally obtained by intercepting and hacking Ms.

21  Miranda's private Facebook and Gmail communications and data, in continued

22  furtherance of their abuse of process and extortion, she could very well be sent to

23  jail.

24       Such injury "is not accurately measurable or adequately compensable by

25  money damages, [thus] irreparable harm is a natural sequel." *Ross-Simons of*

26  *Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996).  Moreover, the

27  harm Ms. Miranda will suffer if Defendants are not enjoined would be "difficult to

28  replace or measure" and she "should not be expected to suffer the loss," further

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-19-

demonstrating irreparable harm. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012); *see also Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("intangible injuries," such as those Ms. Miranda is likely to suffer, if Defendants are not enjoined, usually qualify as irreparable harm).

This factor tips heavily in favor of this Court entering both a TRO and preliminary injunction.

### C.    The Balance of Equities Tip Heavily in Ms. Miranda's Favor

This factor compares the harm to Ms. Miranda if the injunction is denied and the harm, if any, to Defendants if the injunction is granted. Thus, "the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is *improperly* granted or denied." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002).

Here, Ms. Miranda will be immediately and irreparably harmed if a TRO and preliminary injunction does not issue. On the other hand, there is no cognizable harm whatsoever to Defendants if their illegal conduct is enjoined. Defendants cannot be heard to argue that they would be harmed in the slightest by being enjoined from: (1) further illegally intercepting, accessing, and using Ms. Miranda's private electronic communications and data; (2) destroying Ms. Miranda's electronic communications and data; (3) continuing their abuse of process and extortion; or (4) destroying or altering evidence, as already prohibited under the law.

"Very little" harm to Defendants if an injunction is issued, does not tip this factor in Defendants' favor. *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997). Here, Defendants cannot even complain of "very little" harm. They will not suffer any harm whatsoever should this Court enjoin them from pursuing their illegal conduct and destroying or altering evidence.

This factor tips heavily in Ms. Miranda's favor.

### D.    An Injunction Is in the Public Interest

"When the reach of an injunction is narrow, limited only to the parties, and

-20-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

1   has no impact on non-parties, the public interest will be 'at most a neutral factor in

2   the analysis rather than one that favor[s] [granting or] denying the preliminary

3   injunction.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009)

4   (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)).  That said,

5   "[t]here is, of course, a public interest in upholding the law . . . ."  *See, e.g.*, *Pac.*

6   *Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1229 (D. Or.

7   2016).

8        That is all Ms. Miranda is asking of the Court here—that it enter a TRO and

9   preliminary injunction requiring that Defendants obey existing laws.  And the only

10  reason such an injunction is necessary is Defendants have demonstrated repeatedly

11  that they have no respect for the existing laws that already should bind their

12  behavior.  It is Ms. Miranda's sincere hope that an order from this Court will finally

13  get the message through to Defendants that they cannot violate the laws with

14  impunity.

15       Again, this factor tips in Ms. Miranda's favor.

16  ## E.  <u>Ms. Miranda Should Not Be Required to Post a Bond to Obtain</u>

17  <u>Preliminary Injunctive Relief</u>

18       As set forth above, there is no realistic likelihood of harm to Defendants if

19  they are enjoined from continuing their illegal conduct and ordered to preserve

20  evidence.  Accordingly, Ms. Miranda should not be required to post a bond.  *See,*

21  *e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("The district court

22  may dispense with the filing of a bond when it concludes there is no realistic

23  likelihood of harm to the defendant from enjoining his or her conduct.")

24  ## VI.   <u>CONCLUSION</u>

25       For the reasons stated above, Ms. Miranda requests that this Court

26  immediately enjoin Defendants from:  (1) further attempting to intercept, obtain,

27  use, or destroy Ms. Miranda's confidential electronic communications; (2)

28  disclosing any of the illegally-obtained information they have already improperly

-21-

1  intercepted, obtained, and used in attempts to prevent her acceptance into a jail-

2  diversion program on May 11, 2022, and otherwise thereafter; and (3) destroying

3  any additional evidence relevant to this case.

4       Ms. Miranda also requests that this Court order Defendants to show cause

5  why a preliminary injunction should not issue, cementing the relief she requests

6  with this Application.  As set forth above, Ms. Miranda respectfully submits that all

7  of the *Winter* factors weigh heavily in favor of such a preliminary injunction being

8  granted.

9  DATED:  May 9, 2022              PAYNE & FEARS LLP
                                    Attorneys at Law
10

11

12                                  By:    /s/ David A. Grant

13                                         DAVID A. GRANT

14                                  Attorneys for Plaintiff Mireyda Rebecca

15                                  Miranda

16  4868-2786-6910.1

17

18

19

20

21

22

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Case No. 8:22-cv-00869-JVS-DFM

MEMORANDUM OF POINTS & AUTHORITIES ISO PLAINTIFF'S
EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

1

# <u>PROOF OF SERVICE</u>

2

**USDC – CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**
**Case # 8:22-cv-00869-JVS-DFM**
**Mirevda Rebecca Miranda v. Steven Selinsky, et al.**

3

4

## STATE OF CALIFORNIA, COUNTY OF ORANGE

5

6

      At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 4 Park Plaza, Suite 1100, Irvine, CA 92614.

7

8

      On May 9, 2022, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION OF PLAINTIFF MIREVDA REBECCA MIRANDA FOR:  (1) A TEMPORARY RESTRAINING ORDER; (2) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND (3) AN ORDER THAT DEFENDANTS MAINTAIN ALL COMPUTERS, ELECTRONIC DEVICES, AND ELECTRONIC EVIDENCE IMPLICATED IN THIS CASE** on the interested parties in this action as follows:

9

10

11

12

### SEE ATTACHED SERVICE LIST

13

14

      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address dag@paynefears.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

15

16

17

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

18

19

      Executed on May 9, 2022, at Irvine, California.

20

21

22

               /s/ David A. Grant
              David A. Grant

23

24

25

26

27

28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

Case No. 8:22-cv-00869-JVS-DFM

# SERVICE LIST

## USDC – CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION
### Case # 8:22-cv-00869-JVS-DFM
*Mirevda Rebecca Miranda v. Steven Selinsky, et al.*

Seven Selinksy                                        Defendant
21 Spectrum Pointe Dr., Suite 101
Lake Forest, CA 92630
Phone: 888-472-6563
steve@mvgascent.com

David Galan                                           Defendant
21 Spectrum Pointe Dr., Suite 101
Lake Forest, CA 92630
Phone: 888-472-6563
dave@mvgascent.com

Stacey Galan                                          Defendant
21 Spectrum Pointe Dr., Suite 101
Lake Forest, CA 92630
Phone: 888-472-6563
staceysharer@gmail.com

Luxinvia, Inc.                                        Defendant
21 Spectrum Pointe Dr., Suite 101
Lake Forest, CA 92630
Phone: 888-472-6563
info@mvgascent.com

Fons Diviciarum LLC                                   Defendant
21 Spectrum Pointe Dr., Suite 101
Lake Forest, CA 92630
Phone: 888-472-6563
info@mvgascent.com

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100